UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **ALAN PYRON,** | ) |
| **Plaintiff,** | ) |
| v. | ) |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** | ) Case No.: 4:22-cv-556-AMM |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Alan Pyron brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits") and supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

**I.    Introduction**

On September 30, 2019, Mr. Pyron protectively filed an application for benefits under Title II of the Act, alleging disability as of September 26, 2012. R. 16, 113–21. Also on September 30, 2019, Mr. Pyron protectively filed an application for supplemental security income under Title XVI of the Act, alleging disability as

of September 26, 2012. R. 16, 97–110. Mr. Pyron alleges disability due to bipolar disorder, ADHD, agoraphobia, extreme anxiety, right knee problems, and depression. R. 97, 113. He has at least a high school education and has past relevant work experience as a landscaper, a painter, a senior auditor, and an attorney. R. 27.

The Social Security Administration ("SSA") initially denied Mr. Pyron's applications on December 26, 2019, and again denied them upon reconsideration on June 2, 2020. R. 16, 97–110, 113–44. On June 10, 2020, Mr. Pyron filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 16, 170–73. That request was granted. R. 174–76, 243–47. Mr. Pyron received an online video hearing before ALJ Cynthia W. Brown on June 15, 2021. R. 36–69. On July 15, 2021, ALJ Brown issued a decision, finding that Mr. Pyron was not disabled from September 26, 2012 through the date of her decision. R. 13–29. Mr. Pyron was fifty-four years old at the time of the ALJ decision. R. 27.

Mr. Pyron appealed to the Appeals Council, which denied his request for review on March 22, 2022. R. 2–4. After the Appeals Council denied Mr. Pyron's request for review, R. 2–4, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On May 3, 2022, Mr. Pyron sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.   The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. §§ 404.1520, 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two

steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c), 416.920(g)(1), 416.960(c).

The ALJ determined that Mr. Pyron meets the insured status requirements of the Act through September 30, 2012. R. 16, 18. Next, the ALJ found that Mr. Pyron had not engaged in substantial gainful activity since his alleged onset date. R. 18. The ALJ decided that Mr. Pyron had the following severe impairment: degenerative

disc disease, arthritis of the right shoulder and right knee, chronic obstructive pulmonary disease, mood disorder, anxiety disorder, and personality disorder. R. 18. The ALJ found that Mr. Pyron's history of hypertension and polysubstance abuse were "non-severe" because "the medical evidence of record does not show that these impairments have persistently caused more than minimal symptoms and does not show any persistent significant limitations of function arising from these impairments." R. 19. Overall, the ALJ determined that Mr. Pyron did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 19.

The ALJ found that Mr. Pyron's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 23. The ALJ found that Mr. Pyron had the "residual functional capacity to perform light work" with certain limitations. R. 22. The ALJ determined that Mr. Pyron may: frequently climb ramps and stairs; frequently balance; occasionally stoop, kneel, crouch, and crawl. R. 22. The ALJ also determined that Mr. Pyron must not: climb ladders, ropes, or scaffolds; reach overhead bilaterally; experience concentrated exposure to extreme temperatures, fumes, odors, and other pulmonary irritants; or be exposed to any hazards. R. 22. The ALJ also determined that Mr. Pyron: can understand, remember, and carry out simple instructions; can maintain attention for at least two-hour

5

periods; would function best with his own work area without close proximity to others; would benefit from a familiar, repetitive work routine; should avoid quick decision making and rapid changes; could tolerate occasional interaction with the general public and coworkers; and experience workplace changes that are gradually introduced and occur no more than occasionally. R. 22–23.

According to the ALJ, Mr. Pyron was "unable to perform any past relevant work" as a landscaper, a painter, a senior auditor, and an attorney. R. 27. According to the ALJ, Mr. Pyron was "a younger individual . . . on the alleged disability onset date," but "subsequently changed age categories to an individual closely approaching advanced age," as those terms are defined by the regulations. R. 27. The ALJ determined that he has "at least a high school education." R. 27. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not [he] has transferable job skills." R. 27. Because Mr. Pyron's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the unskilled light occupational base." R. 27–28. That expert testified that such individual "would be able to perform the requirements of representative occupations such as a price marker[,] . . . a mailroom clerk[,] . . . and an assembler." R. 28, 67.

Based on these findings, the ALJ concluded that Mr. Pyron did not have a disability as defined in the Act, from September 26, 2012 through the date of the decision, July 15, 2021. R. 28–29. Mr. Pyron now challenges that decision.

### III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*,

703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. Discussion

Mr. Pyron alleges that the ALJ's decision should be reversed because the ALJ failed "to fully and fairly develop the record" regarding Mr. Pyron's agoraphobia impairment. Doc. 10 at 22. In the alternative, Mr. Pyron alleges that the ALJ's decision "is not supported by substantial evidence considering the effect of [his] total impairments singly or in combination." *Id.*

### A. Duty to Develop the Record

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An individual claiming benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of his application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1513a(b)(2), 404.1517, 416.917, 416.919a(b); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

Mr. Pyron argues that his "medical records . . . do not contain sufficient evidence for the ALJ to make an informed decision regarding the severity of [his] agoraphobia impairment." Doc. 10 at 21. Mr. Pyron states that there is a lack of evidence in the record between 2012 and 2019 because he "lacked medical insurance and could not afford any medical treatment." *Id.* at 22 (citing R. 60). Mr. Pyron argues the decision of the ALJ should be "reversed and remanded for further

development of the record concerning [his] agoraphobia impairment, and another consultative examination with a psychiatrist." *Id.* Mr. Pyron states that "[t]he psychological evaluation . . . by Dr. Arnold on December 4, 2019, does not indicate whether she even asked Mr. Pyron about his agoraphobia," and that "Dr. Bolton found [Mr. Pyron] to be suffering from agoraphobia." *Id.* at 21–22.

The Commissioner argues that "the ALJ sufficiently discussed the evidence of record in support of her finding" that Mr. Pyron's "complaints of disabling agoraphobia . . . were not entirely consistent with the record evidence." Doc. 11 at 8. The Commissioner also argues that Mr. Pyron "has shown neither a breach of duty [to develop the record] nor harmful error" because "he has not adequately shown that there was a gap in the records . . . material to the ALJ's finding that he was not disabled." *Id.* at 11–12.

Although Mr. Pyron argues that there is a need for further development of the medical record and a psychiatric consultative examination, the ALJ discussed Mr. Pyron's mental impairments throughout her decision. *First*, she identified mood disorder, anxiety disorder, and personality disorder as severe impairments and stated they "limit [Mr. Pyron's] ability to perform basic work activities." R. 18–19. With respect to Mr. Pyron's mental impairments, the ALJ cited a December 2019 psychological evaluation diagnosing him with "mood disorder, anxiety disorder, and

personality disorder" and his testimony "that he currently takes medications for these impairments." R. 19; *see also* R. 469–71.

*Second*, in her step three analysis, the ALJ found that "[t]he severity of [Mr. Pyron's] mental impairments, considered singly and in combination, does not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08." R. 21. The ALJ went on to consider the "paragraph B" criteria and in that analysis cited: Mr. Pyron's function report; Mr. Pyron's ability "to provide information about his health, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers"; the December 2019 "Report of Psychological Evaluation"; State agency reviewing psychiatrist reports; and that Mr. Pyron "had a good rapport with providers, was described as cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." R. 21–22.

*Third*, the ALJ included in Mr. Pyron's residual functional capacity limitations related to his mental impairments. R. 22. In the residual functional capacity, the ALJ specifically stated Mr. Pyron:

> can understand, remember, and carry out simple instructions, and maintain attention for at least two-hour periods; would function best with his own work area without close proximity to others; would benefit from a familiar, repetitive work routine, but should avoid quick decision making and rapid changes; could tolerate occasional interaction with the general public and

11

>coworkers; and changes in the workplace should be gradually introduced and occur no more than occasionally.

R. 22–23. In forming the residual functional capacity, the ALJ properly described and applied the Eleventh Circuit's pain standard. R. 23–26. Under that standard, Mr. Pyron must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26.

With respect to Mr. Pyron's mental impairments, the ALJ cited his disability report, function report, and hearing testimony to support his allegations. R. 23. She stated that she "is cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses" and considered Mr. Pyron's "psychological symptoms and their effect on his functioning . . . together, instead of separately, regardless of the diagnostic label attached." R. 25. After citing the evidence of record, the ALJ concluded that

12

Mr. Pyron's "daily activities and reported functioning do not indicate disabling mental limitations, but he does have some mental limitations as defined in the residual functional capacity herein." R. 25. The ALJ clearly articulated her reasons for finding that Mr. Pyron's agoraphobia testimony was "not entirely consistent with the medical evidence and other evidence in the record." R. 23.

The ALJ's thorough analysis of Mr. Pyron's mental impairments throughout her decision demonstrates that the record here was neither incomplete nor inadequate as it related to Mr. Pyron's agoraphobia. Instead, the record was sufficient for the ALJ to evaluate Mr. Pyron's impairments and craft a residual functional capacity that incorporated his abilities. Although Mr. Pyron alleges that the record is bare because of his lack of medical insurance, the record contained both reports of the State agency providers and the December 2019 evaluation, which were discussed in detail by the ALJ. Although Mr. Pyron questions the December 2019 evaluation because it "does not indicate" that Mr. Pyron was asked about his agoraphobia, Doc. 10 at 21, the report includes an evaluation of Mr. Pyron's background, a mental status exam, and the psychologist's diagnostic impression of mood disorder, anxiety disorder, and personality disorder. R. 469–71. Substantial evidence supports the ALJ's consideration of Mr. Pyron's impairments, and Mr. Pyron has failed to establish that the ALJ had any obligation to further develop the record.

### B. Combined Effect of Impairments

The Eleventh Circuit has held that when considering the "total limiting effects" of impairments, an ALJ must consider "all of a claimant's medically determinable impairments, even those not designated as severe." *Ehrisman v. Astrue*, 377 F. App'x 917, 919 (11th Cir. 2010); *see Davis v. Shalala*, 985 F.2d 528, 533 (11th Cir. 1993); 20 C.F.R. § 404.1545(a)(2). "[I]t is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment." *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984). A statement that an ALJ "considered all symptoms" is not sufficient if the content of the ALJ's decision does not include discussion or findings as to how "all symptoms" affected the claimant's residual functional capacity. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

Mr. Pyron argues that the ALJ's decision fails "to make specific and well-articulated findings as to the effect of the combination of impairments." Doc. 10 at 22. The Commissioner argues that "the ALJ also properly considered the combination of [Mr. Pyron's] impairments," "stated in her decision that the combination of [Mr. Pyron's] impairments did not meet or equal a listed impairment," and considered and accommodated Mr. Pyron's severe and non-severe impairments in the residual functional capacity. Doc. 11 at 12.

The ALJ determined that Mr. Pyron "did not have an impairment or combination of impairments that meets or medically equals the severity of one of

14

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." R. 19. The ALJ determined a residual functional capacity that incorporated both exertional and non-exertional limitations – to account for Mr. Pyron's degenerative disc disease, arthritis, chronic obstructive pulmonary disease, mood disorder, anxiety disorder, and personality disorder. R. 18, 22–23. Specifically, the ALJ stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 23. The ALJ remarked that Mr. Pyron's "treatment records and diagnostic imaging do not indicate disabling functional limitations arising from his impairments." R. 23.

Additionally, the residual functional capacity accommodates Mr. Pyron's "degenerative disc disease, arthritis of right shoulder and right knee, as well as his chronic obstructive pulmonary disease." R. 24–25. As for Mr. Pyron's mental impairments, the ALJ stated that "he does have some mental limitations as defined in the residual functional capacity herein." R. 25. The ALJ also noted that she "limited [Mr. Pyron] to accommodate his impairments, both severe and non-severe." R. 26. The ALJ properly considered the combination of impairments and determined Mr. Pyron's residual functional capacity accordingly.

V.   **Conclusion**

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 20th day of September, 2023.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE